J-S22026-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : IN THE SUPERIOR COURT OF |
| | :           PENNSYLVANIA |
| | : |
| v. | : |
| | : |
| | : |
| SHAKUR CLARK | : |
| | : |
| Appellant | : No. 19 EDA 2025 |

Appeal from the Judgment of Sentence Entered December 17, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0000313-2021

BEFORE: PANELLA, P.J.E., LANE, J., and BENDER, P.J.E.

MEMORANDUM BY LANE, J.:               **FILED JULY 30, 2026**

Shakur Clark ("Clark") appeals from the judgment of sentence imposed following his convictions for second-degree murder, robbery, conspiracy to commit robbery, possession of an instrument of crime, firearm not to be carried without a license, and carrying a firearm in public in Philadelphia.[1] We affirm.

We glean the following factual history from the evidence and testimony presented at trial. In 2020, Miguel Santana ("Santana") was working on a vehicle belonging to his friend, Keon Davis ("Davis"), at his neighborhood garage in Philadelphia, when Shakeya Holmes ("Holmes") arrived to speak with him. Before she could do so, however, Davis, who was present and waiting for his vehicle, intervened to prevent her from disrupting Santana from

_____

[1] **See** 18 Pa.C.S.A. §§ 2502(b), 3701(a)(1)(i), 903, 907(a), 6106(a)(1), 6108.

his work. This intervention led to an argument between Holmes and Davis, during which Santana stepped in to warn Davis multiple times that if he continued to argue with Holmes, she would come back for him with Clark, her child's father. As a final response to Santana's warnings, Davis informed Holmes that he wasn't scared of Clark, and that if she "can call somebody, [he] can call somebody[,]" as well. N.T., 12/11/24, at 49. To this, Holmes replied, "you got it[,]" before leaving the garage. *Id*.

Holmes then contacted Clark regarding the dispute with Davis, and Clark subsequently instructed her to retrieve him and his friend. A few hours later, Holmes returned to the garage with Clark and his friend in a gold-colored Honda civic. After circling the block once, Holmes parked her vehicle on the nearby corner, whereupon Clark exited the vehicle with a firearm, approached Davis directly, and ordered him to empty his pockets at gunpoint. When Davis responded that all he had on him was his phone, Clark shot him four times, ultimately killing him. Clark then returned to the Honda Civic and fled the scene. In doing so, Holmes and Clark left both the vehicle and the firearm with Clark's friend, before absconding to a hotel room in Atlantic City, New Jersey. After a brief stay at the hotel, Holmes and Clark traveled to the home of "Char[,]" a woman whom Clark referred to as his non-biological mother. *Id*. at 60. There, Clark informed Char of his situation and that he needed a place to stay, and Char responded by arranging for him and Holmes to stay with a friend of hers in Wilmington, Delaware.

In the aftermath of the shooting, Santana provided police with a statement in which he identified Davis' killer as a short Black male with dreadlocks, a face tattoo above his left eye and near his left temple, and a surgical mask covering his face. Despite the fact that Clark had neither dreadlocks nor a tattoo in this specified area, police submitted Santana to a photo array which included a photo of Clark, and Santana identified Clark as the individual who shot Davis. As a result of this identification, police located and arrested both Clark and Holmes in Wilmington, Delaware, and the Commonwealth charged Clark with, *inter alia*, the above-listed crimes.

The Commonwealth also charged Holmes with several offenses in connection with the murder. However, Holmes eventually entered into a negotiated plea agreement with the Commonwealth whereby, in exchange for the Commonwealth dismissing certain charges against her, she agreed to plead guilty to both robbery and conspiracy to commit robbery, as well as testify against Clark.

The instant matter against Clark proceeded to a jury trial in 2024, during which the Commonwealth presented the testimony of Holmes, who the jury understood was testifying in accordance with the conditions of her aforementioned guilty plea, as well as Santana. Holmes relevantly testified that although she called Clark following her argument with Davis, it was at his instruction that she retrieve him and his friend to return to the garage. As such, Holmes maintained that when she returned to the garage with Clark and

his friend, she "had no idea what was going to happen[.]" N.T., 12/11/24, at 154-55. Along these same lines, Holmes emphasized that when she overheard Clark ask his friend for a gun upon arriving at the garage, both she and Clark's friend objected to him using it to confront Davis. Holmes explained that despite this objection, Clark nevertheless exited her vehicle with the firearm to confront Davis, and that she ultimately chose to remain in the vehicle as he did so. As a result of this decision, Holmes clarified that when she thereafter witnessed Clark and Davis "going back and forth having words[,]" she could not hear what either individual was saying. *Id*. at 55. Lastly, Holmes testified that after she saw Clark shoot Davis multiple times, Clark returned to her vehicle, directed her to drive away, and she accompanied him in hiding for approximately a "[w]eek and a half to two weeks[,]" until their joint arrest. *Id*. at 61.

Santana thereafter provided a slightly different version of events. In doing so, Santana testified that before Holmes left his garage, she told Davis, "I'll be back for you[.]" N.T., 12/12/24, at 71. In accordance with this statement, Santana relayed that when Holmes returned to his garage a few hours later, he witnessed Clark exit Holmes' vehicle with a firearm and promptly use it to confront Davis, who was sitting nearby. Santana explained that during this confrontation, he overheard Clark initially tell Davis, "you were disrespecting my girl[,]" and that when Davis denied doing so, Clark said to Davis, "empty out your pockets[.]" *Id*. at 74. Santana then communicated

that when Davis did not comply with Clark's command, and instead told Clark, "all I have is my phone," he subsequently heard gunshots and witnessed Davis run towards his garage. *Id*. Santana testified that once Clark returned to Holmes' vehicle and drove away, he ultimately discovered Davis unresponsive "on the floor in the garage." *Id*. at 75. Additionally, Santana clarified that although he initially told police that the shooter "was short, skinny, and had dreadlocks," he was "very confident" at the time of the photo array that his identification of Clark as the shooter was accurate. *Id*. at 89, 137. Finally, Santana testified that after the incident, and while he was "getting transferred" from prison to begin rehab as a result of a separate matter, he encountered Clark once more, and that during this encounter, Clark confessed to shooting Davis at the garage and further asked him "not to come to court." *Id*. at 92-93.

Following the presentation of the Commonweath's case, Clark did not testify in his defense. At the conclusion of trial, the jury found Clark guilty of second-degree murder, robbery, conspiracy to commit robbery, possession of an instrument of crime, firearm not to be carried without a license, and carrying a firearm in public in Philadelphia. On December 17, 2024, the trial court imposed an aggregate term of life imprisonment without parole. The next day, Clark filed a timely, counseled notice of appeal. Notably, however, and despite this filing, Clark filed a post-sentence motion three days later, in which he raised challenges to both the sufficiency and weight of the evidence

supporting his convictions. Five days thereafter, having not received any response to this motion, Clark filed another counseled notice of appeal, and both he and the trial court have since complied with Pa.R.A.P. 1925.

Clark raises the following issues for our review:

1. Was the evidence sufficient to establish [Clark's] guilt beyond a reasonable doubt as to second-degree murder, robbery, and criminal conspiracy to commit robbery?

2. Were the verdicts on second-degree murder, robbery, and criminal conspiracy to commit robbery against the weight of the evidence?

Clark's Brief at 6 (issues reordered).

Clark's first issue presents a challenge to the sufficiency of the evidence supporting his convictions for second-degree murder, robbery, and conspiracy to commit robbery. As these sufficiency claims are interrelated, we will address them together. A challenge to the sufficiency of the evidence presents a question of law for which our standard of review is *de novo*, and our scope of review is plenary. *See Commonwealth v. Johnson*, 236 A.3d 1141, 1152 (Pa. Super. 2020) (*en banc*). When considering a challenge to the sufficiency of the evidence:

> [W]e evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive

that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Accordingly, the fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence. Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld.

*Commonwealth v. Franklin*, 69 A.3d 719, 722-23 (Pa. Super. 2013) (quotations marks, brackets, and citations omitted). This Court has further held that "the uncorroborated testimony of a single witness is sufficient to sustain a conviction for a criminal offense[.]" *Commonwealth v. Johnson*, 180 A.3d 474, 481 (Pa. Super. 2018).

With respect to the criminal convictions at issue, "[a] person is guilty of robbery if, in the course of committing a theft, he . . . inflicts serious bodily injury upon another[.]" 18 Pa.C.S.A. § 3701(a)(1)(i).

A person is guilty of conspiracy to commit robbery, "if with the intent of promoting or facilitating its commission he: (1) agrees with [an]other person [that] one or more of them will engage in conduct which constitutes such crime . . . ; or (2) agrees to aid such other person . . . in the planning or commission of such crime . . . .." 18 Pa.C.S.A. § 903. As this Court has explained, a "conspiracy is almost always proven through circumstantial evidence." *Commonwealth v. Holston*, 211 A.3d 1264, 1278 (Pa. Super.

2019) (*en banc*) (*citing* **Commonwealth v. Lambert**, 795 A.2d 1010, 1016 (Pa. Super. 2002) (*en banc*)). In this regard, it is well established that "[t]he conduct of the parties and the circumstances surrounding their conduct may create a web of evidence linking the accused to the alleged conspiracy beyond a reasonable doubt." **Id**. (internal quotation marks omitted). "Among the circumstances which are relevant, but not sufficient by themselves, to prove [conspiracy] are: (1) an association between alleged conspirators; (2) knowledge of the commission of the crime; (3) presence at the scene of the crime; and (4) in some situations, participation in the object of the conspiracy." **Id**. (*quoting* **Lambert**, 795 A.2d at 1016). Importantly, however, the combination of any amount of circumstantial evidence to prove conspiracy must result in more than just "mere suspicion or possibility of guilty collusion." **Id**. (internal quotation marks omitted).

Finally, a person is guilty of the crime of second-degree murder if they commit a criminal homicide while "engaged as a principal or an accomplice in the perpetration of a felony." 18 Pa.C.S.A. § 2502(b). Pertinently, the statute delineating the crime of second-degree murder defines the "perpetration of a felony" as, *inter alia,* an individual's commission, or attempted commission, of a robbery. 18 Pa.C.S.A. § 2502(d). Simply put, a person who commits a homicide while simultaneously committing, or attempting to commit, a robbery is guilty of second-degree murder. **See** 18 Pa.C.S.A. § 2502(b), (d).

Clark argues that the Commonwealth's evidence was insufficient to support his convictions for second-degree murder, robbery, and criminal conspiracy to commit robbery. As it pertains to his conviction for robbery, Clark avers that, with the exception of Santana's contradictory trial testimony stating that Clark told Davis to empty out his pockets prior to the shooting, "there was no evidence that [he] did, or wanted to, take property from" Davis. Clark's Brief at 22. To this extent, Clark maintains that "**no evidence** indicated that" either he or Holmes had "planned a robbery prior to the shooting." *Id*. at 22-23 (emphasis in original). Clark thus concludes that because there is no evidence which can prove, beyond a reasonable doubt, that he intended to take property from Davis, his "robbery conviction cannot stand." *Id*. at 23.

In this same vein, Clark contends that his conviction for criminal conspiracy is similarly unsupported, as "there is no evidence that [he] entered into a conspiracy with . . . Holmes to commit robbery." *Id*. at 24. While Clark acknowledges the trial court "elaborated at length the steps that [he and Holmes] took before and after the shooting," he stresses that "none of these steps evidence **an agreement to commit robbery**." *Id*. at 24. (citations omitted, emphasis in original). Clark therefore asserts that because the trial court's finding of general criminal intent from these ancillary actions was not enough to satisfy a conviction of conspiracy for the specific crime of robbery, this Court should vacate it.

Lastly, and in accordance with the conclusions he reaches in his above two sufficiency claims, Clark briefly argues that absent any evidence to support either of the predicate felony convictions of robbery or conspiracy to commit robbery, the Commonwealth necessarily failed to support his conviction for second-degree murder. As such, Clark argues that we should vacate this conviction, as well.

The trial court determined that each of Clark's sufficiency challenges was without merit, reasoning as follows:

> The Commonwealth produced evidence sufficient for supporting [Clark's] conviction for murder of the second degree. The record demonstrates that the victim of [Clark's] robbery, . . . Davis, died as a result of a shooting that occurred during the course of the robbery - a "felony" within the meaning of 18 Pa.C.S.A. § 2502(d).

> At [Clark's] trial, the Commonwealth and [Clark's] counsel stipulated to the testimony of . . . the forensic pathologist who performed the autopsy of . . . Davis. [She] testified that the immediate cause of death for . . . Davis, who was pronounced dead at Temple Hospital, was multiple gunshot wounds, and the manner of his death was homicide. Furthermore, . . . Holmes recalled seeing [Clark] shoot the decedent, before getting back in her car.

> Finally, . . . Santana testified at trial to hearing [Clark] tell the decedent to empty his pockets, and that when . . . Davis refused, [Clark] shot him. This evidence, when viewed in the light most favorable to the Commonwealth as verdict winner, demonstrates that the victim of [Clark's] robbery, died as a foreseeable outgrowth of [Clark's] robbery. The foregoing evidence shows that [Clark] was the assailant in the shooting . . . and that [he] perpetrated that shooting while in the process of committing a robbery. Accordingly, there was sufficient evidence to convict [Clark] of murder of the second degree.

\* \* \* \*

The Commonwealth presented ample evidence sufficient to convict [Clark] of conspiracy to commit robbery. The record reflects that [Clark] entered into an agreement with . . . Holmes to commit an unlawful act with shared criminal intent. At [Clark's] jury trial, . . . Holmes testified to driving [Clark] to the place where he would commit a crime and then stayed by his side for thirteen . . . days while he was on the run. According to her testimony, [Holmes] picked up [Clark] after she got into a verbal altercation with the decedent at . . . Santana's garage . . .. She stated that [Clark] ordered her to head to the garage, where [Clark] attempted to rob . . . Davis and then shot him when he resisted. Then, after witnessing the shooting, . . . Holmes allowed [Clark] to get back into her car, and she helped him flee the scene. She then accompanied [Clark] to Atlantic City, New Jersey[,] and then on to Wilmington[,] Delaware.

. . . Santana testified that after . . . Holmes had left following the verbal altercation with [Davis], she returned driving a gold Honda . . .. He further explained that [Clark] proceeded to exit the vehicle and approach him and . . . Davis. Lastly, . . . Santana affirmed that he heard [Clark] tell [Davis] to empty his pockets, shortly before he heard gunshots.

* * * *

Though no "explicit" or "formal" agreement was alleged at [Clark's] trial, the Commonwealth, nonetheless, introduced ample testimony demonstrating that an agreement existed between [Clark] and . . . Holmes for the violent, and illegal act perpetrated against . . . Davis.

This evidence, when viewed in the light most favorable to the Commonwealth as verdict winner, thus established that a conspiracy existed between [Clark] and . . . Holmes for the robbery of . . . Davis. Accordingly, this court finds that the Commonwealth offered sufficient evidence to support [Clark's] conviction of conspiracy to commit robbery.

Furthermore, the Commonwealth presented ample evidence sufficient to convict [Clark] of robbery beyond a reasonable doubt. The record reflects that [Clark] robbed . . . Davis, at gunpoint, before fatally shooting him. At [Clark's] trial, . . . Santana testified that [Clark] approached him and . . . Davis and that he saw [Clark]

- 11 -

had a firearm in his possession. . . . Santana then testified to hearing [Clark] order [Davis] to "empty out your pockets," to which [Davis] replied "all I have is my phone." After that he recalled hearing gunshots, and after coming out from behind his truck, he found . . . Davis on the ground in his garage. When viewed in the light most favorable to the Commonwealth as verdict winner, the foregoing evidence shows that [Clark] was the assailant in the robbery at [the garage]. Accordingly, there was sufficient evidence to convict [him] of robbery.

Trial Court Opinion, 11/17/25, at 6-11 (citations and unnecessary capitalization omitted).

After careful review, we determine that each of Clark's sufficiency claims is without merit. Preliminarily, as it pertains to the evidence supporting his conviction for robbery, Clark does not dispute that he used a firearm to shoot, and consequently kill, Davis on the day of the incident. Instead, Clark premises this sufficiency challenge on the fact that the Commonwealth could only support the idea that he was committing a theft at the time of the shooting via Santana's testimony that he heard Clark order Davis to empty out his pockets at gunpoint. We reiterate, however, that this uncorroborated testimony, alone, is sufficient to prove the requisite theft element that Clark now challenges. *See Johnson*, 180 A.3d at 481. Accordingly, we determine that Clark's sufficiency challenge with respect to his robbery conviction is plainly without merit.

Moving to Clark's second sufficiency claim, that the Commonwealth's evidence was insufficient to prove that he conspired with Holmes to commit

the aforementioned robbery, we likewise determine that it is meritless.[2] Here, we observe that Clark premises his sufficiency claim entirely on the fact that the Commonwealth did not present any direct evidence at trial to prove that he conspired with Holmes to rob Davis, and that conversely, Holmes' testimony on the subject directly contradicted such a finding. However, in disposing of this claim, we emphasize that the jury was within its province to both discredit Holmes' testimony in this regard, and infer from the combined circumstances encompassing the robbery that she indeed played a conspiratorial role. *See Commonwealth v. McClure*, 144 A.3d 970, 977 (Pa. Super. 2016) (stating that "[t]he determination of credibility of a witness is within the exclusive province of the jury"); *see also Franklin*, 69 A.3d at 722-23 (instructing that "the fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence").

As detailed *supra*, the record reflects that Holmes: (1) entered into a heated exchange with Davis that concluded with her telling him that she would

---

[2] While we could find this claim waived as a result of a presumed typo in Clark's Rule 1925(b) concise statement indicating that he is challenging the sufficiency of the evidence underlying a conviction for conspiracy to commit *murder* — a crime that the Commonwealth had originally charged him with but later amended during trial to reflect the instant crime of conspiracy to commit *robbery* — we decline to do so given these unique circumstances in which the typographical error is clear and the trial court properly addressed the claim in its Rule 1925(a) opinion.

return for him with Clark; (2) thereafter called Clark and followed his instructions to collect him and his friend to return to Santana's garage; (3) allowed Clark to exit her vehicle and approach Davis with a firearm while she remained waiting in the driver's seat; (4) acted as Clark's getaway driver following the robbery/murder; and (5) accompanied him in hiding for approximately two weeks until their arrest. These circumstances, when viewed in the light most favorable to the Commonwealth as the verdict winner, clearly engender a reasonable inference that Holmes and Clark conspired to rob Davis. *See Holston*, 211 A.3d at 1278; *see also Franklin*, 69 A.3d at 722-23. Consequently, we determine that Clark's sufficiency claim fails with respect to this conviction, as well.

Finally, because we determine that Clark's sufficiency claims are meritless with respect to the predicate felony crimes of robbery and conspiracy to commit robbery, we necessarily conclude that his argument challenging the sufficiency of the evidence supporting his conviction for second-degree murder is similarly unmeritorious. Accordingly, as we determine that the Commonwealth presented sufficient evidence to support each of Clark's at-issue convictions, we hold that his first issue is overall meritless.

In his second issue, Clark presents a challenge to the weight of the evidence underlying his convictions for second-degree murder, robbery, and conspiracy to commit robbery. Before we may review the merits of these

claims, however, we must first determine whether Clark preserved them for our review.

To preserve a weight of the evidence claim, an appellant must raise the claim "either in a post-sentence motion, by a written motion before sentencing, or orally prior to sentencing." *Commonwealth v. Mbewe*, 203 A.3d 983, 988 (Pa. Super. 2019). In accordance with this requirement, our rules of appellate procedure dictate that, following the counseled taking of an appeal, a trial court is generally divested of jurisdiction in a matter. *See* Pa.R.A.P. 1701(a) (stating that, except as otherwise prescribed, the trial court may no longer proceed further in a matter after an appeal is taken). Thus, where an appellant files a post-sentence motion after filing a counseled notice of appeal, he necessarily divests "the trial court of any jurisdiction to consider any claims that could be raised for the first time in a post-sentence motion." *Commonwealth v. Umoh*, 311 A.3d 24, 33 (Pa. Super. 2024). In other words, any issues that an appellant raises for the first time after filing a notice of appeal — excepting challenges to the sufficiency of the evidence, contempt, or the legality of a sentence — are waived and not properly before this Court. *See id*.; *see also* Pa.R.A.P. 302(a) (instructing that "[i]ssues not raised in the trial court are waived and cannot be raised for the first time on appeal.").

Instantly, we note that Clark did not raise a challenge to the weight of the evidence either orally or in a written motion prior to sentencing. Further, while we acknowledge that Clark attempted to include such a challenge in an

otherwise timely post-sentence motion, he did so only **after** filing a counseled notice of appeal. Therefore, by first filing a notice of appeal, he divested the trial court of the very jurisdiction required to address his weight claim. **See Umoh**, 311 A.3d at 33; **see also** Pa.R.A.P. 1701(a); Pa.R.A.P. 302(a). Accordingly, because Clark has failed to properly preserve his weight of the evidence claim for our review, we are constrained to hold that it is waived. **See id**.

Consequently, as we determine that neither of Clark's overarching appellate issues merit relief, we affirm his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/30/2026